## Case No. 15,394.

### UNITED STATES v. HOSMER et al.

[17 Int. Rev. Rec. 38; 7 Chi. Leg. News, 116.] [1]

Circuit Court, N. D. Ohio. Jan. Term, 1873.

INTERNAL REVENUE—DISTILLER'S BOND—LIABILITY OF SURETIES—RELEASE.

[1. Failure of an assessor to obtain the written consent of the mortgagee of premises about to be used as a distillery. to such use. and a stipulation that the lien of the United States for taxes should have priority over the mortgage, before accepting the distiller's bond, is no ground of defence to the sureties thereon; for a government security cannot be imperiled or destroyed by the laches of its officers or agents.]

[2. The liability of the sureties is not released by the fact that the collector permitted the distiller to remove from the bonded warehouse a quantity of spirits, sufficient to pay all the taxes due. without first requiring payment thereof.]

George Willey, U. S. Atty.

Homer Goodwin and J. M. Lemmon. for defendants.

SHERMAN, District Judge. This is an action to recover damages for the breach of a distillery bond given by Theodore Hosmer as principal, and George Stahl and Gottleib Hart as sureties. to the United States. The bond is in the sum of $5,000 and is framed under the 7th section of the internal revenue act of July 20, 1868 [15 Stat. 127]. This section provides that every distiller before commencing business shall give a bond with at least two sureties to be approved by the assessor of his district conditioned that the principal shall faithfully comply with all the provisions of the law, "that he will not suffer the lot or tract of land on which the distillery stands. or any part thereof, or any of the distillery apparatus to be encumbered by mortgage, judgment or other lien during the time in which he shall carry on said business. The next section of the same act provides among other things that no bond of a distiller shall be approved unless he is the owner in fee, unencumbered by mortgage,

[1] [1 Chi. Leg. News, 116, contains only a partial report.]

etc., of the lot on which the distillery is situated, or unless he files with the assessor, in connection with the notice prescribed in section 6, the written consent of the judgment creditor, or other lien holder, expressly stipulating that the lien of the United States for taxes and penalties shall have priority over such judgment or other encumbrance. The declaration in this case assigns the non-payment of taxes on 6,000 gallons of spirits distilled by Hosmer, as a breach of the bond. The sureties have filed an answer containing three defences, to the second and third of which the plaintiff has demurred. In the second defence the defendants allege that prior to the execution of said bond by Hosmer and themselves, Hosmer executed a mortgage in favor of one Dempsey, in the sum of $2,681. That at the time the bond was executed and delivered to plaintiff this mortgage was a subsisting encumbrance upon the distillery premises. That the assessor of that district did not require of Hosmer nor did Hosmer at any time file with the assessor the written consent of Dempsey, the mortgagee. that the premises might be used for the purpose of distilling spirits, and stipulating that the lien of the United States for taxes and penalties should have priority over said mortgage, and in case of the forfeiture of the premises that the title of the same should vest in the United States, discharged of said mortgage, but that the assessor approved the bond without such written consent and stipulation filed. That by reason of the non-payment of taxes upon spirits distilled by Hosmer the collector distrained the premises and sold the same, paying said mortgage out of the proceeds of the sale, and but for this mortgage the proceeds would have fully satisfied the claim of the United States.

These facts being admitted by the demurrer of the plaintiff, the question arises, what effect upon the liability of the bondsmen does this unlawful action of the assessor in approving the bond before all the requirements of the statute were fulfilled have? The point raised is not a new one, it already having been decided by the United States district court for the Eastern district of Pennsylvania, afterwards affirmed by the circuit court of the same district in a late case presenting precisely the same facts. Osborne v. U. S. [Case No. 10,599]. It was there held that these facts were not sufficient to bar the right of the plaintiff to recover on the bond; that a government security could not be imperilled or destroyed by the laches of one of its officers or agents. U. S. v. Kirkpatrick. 9 Wheat. [22 U. S.] 720; U. S. v. Van Zandt. 11 Wheat. [24 U. S.] 184; Dox v. Postmaster General. 1 Pet. [26 U. S.] 317. The demurrer to the second count of defendant's answer is therefore sustained.

The demurrer to the third count of the answer raises substantially the same question under a different state of facts. The defendants alleged that all the taxes due plaintiff from Hosmer were assessed on spirits distilled by Hosmer, and were a first lien on said spirits; that the spirits were deposited in plaintiff's bonded warehouse and under the sole control of plaintiff's officers; that the collector permitted Hosmer to remove from the bonded warehouse 5,000 gallons, and more than sufficient to pay all the taxes chargeable thereon, without first requiring payment of these taxes from Hosmer. It is sufficient to say that these allegations do not constitute a valid defence to the action. This count of the answer of the defendants simply sets up the laches of an officer of the plaintiff, but laches cannot discharge a government security. This principle was early established by the supreme court of the United States in U. S. v. Kirkpatrick, 9 Wheat. [22 U. S.] 720, already referred to. In the case Justice Story says: "The general principle is that laches is not imputable to the government, and this maxim . . . . is founded upon a great public policy. . . . The utmost vigilance would not save the public from the most serious losses if the doctrine of laches can be applied to its transactions. It would. in effect, work a repeal of all its securities." The same doctrine was reasserted in U. S. v. Van Zandt, 11 Wheat. [24 U. S.] 184. And again in Dox v. Postmaster General, 1 Pet. [26 U. S.] 317, where the above cases are reviewed and sustained.

But it was urged by the defendants in the argument, that the plaintiff having had in its sole possession and custody these spirits, the property of Hosmer, with a first and paramount lien on them, and afterwards voluntarily released them, the sureties upon the bond are discharged. This might be true if the lien on these spirits could be construed to be an original collateral security. But the right of the government to take this property in satisfaction of the taxes due on it— that is to say, the lien of the government accrued at a time subsequent to the execution and delivery of the bond. The plaintiff had no lien on these spirits until the taxes became due, and the taxes did not become due until long after the bond was given. This lien can therefore in no sense be regarded as collateral to the bond. There is a broad distinction between securities in hand when the bond is taken, i. e. collaterals, and securities that subsequently come into the possession of the obligee. In the former case, a voluntary release of the collateral security would discharge the surety. In the latter case it would have no effect upon the surety's liability. Furthermore, we are of the opinion that the lien which the law gives in this and similar cases upon the property of the distiller, is merely incidental to the bond required of him, and is in no sense a collateral security, which must be retained at the hazard of releasing the sureties.

Demurrer to both defences of defendants' answer sustained.